UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **TONY BRUCE WILSON**, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Civil Action Number |
| vs. ) | **5:20-cv-00276-AKK** |
| ) | |
| **ANDREW SAUL, Commissioner of** ) | |
| **Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

# MEMORANDUM OPINION

Tony Bruce Wilson brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). Among other things, Wilson contends that the Administrative Law Judge ("ALJ") failed to properly consider his subjective testimony, ignored parts of the record in reaching her conclusion that Wilson could perform a range of light work, and did not properly weigh opinions of a treating and examining physician. After careful review, this court finds that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. Therefore, the decision denying benefits is due to be affirmed.

**I.**

Wilson worked as a store clerk, door man, assistant manager, waiter, and in a production plant before he stopped working at age 49 due to his alleged disability. *See* R. 249, 252, 262-63. Thereafter, Wilson filed applications for a period of disability and disability insurance benefits and supplemental security income, alleging a disability onset date of June 14, 2010, which he later amended to February 8, 2017,[1] due to impairments from severe depression, anxiety, chronic obstructive pulmonary disease (COPD), emphysema, HEP, back problems, potentially malignant node in the neck, severe pain in legs when walking, and dizziness. R. 44, 70, 115, 221-22, 228-36, 244. The SSA denied Wilson's applications, R. 68, 82, 104, 110, and Wilson requested a hearing before an ALJ, R. 118. Following the hearing, the ALJ issued a decision denying Wilson's claim. R. 10-33. Subsequently, the Appeals Council ("AC") denied Wilson's request for review, rendering the ALJ's opinion the final decision of the Commissioner. R. 1, 218; *see* 42 U.S.C. § 405(g). Wilson now seeks review in this court. Doc. 1.

**II.**

In addressing the Wilson's appeal, the issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C.

---

[1] By amending his alleged onset date, Wilson dismissed his claim for a period of disability insurance benefits because the amended onset date is after his date last insured. *See* R. 13, 44, 69, 244.

§ 405(g); *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997), and whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 Fed. Appx. 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quoting *Bloodsworth, v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)) (other citations omitted).

The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id.* (citing *Bloodsworth*, 703 F.2d at 239). "Indeed, 'even if the evidence preponderates against the Commissioner's findings, [the court] must affirm if the decision reached is supported by substantial evidence.'" *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quoting *Crawford*, 363 F.3d at 1158-59). While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court's review "does not yield automatic affirmance." *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

**III.**

An individual applying for disability benefits bears the burden of proving that he is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). To qualify, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 416(i)(1)(A). Further, the impairments must be so severe that the claimant "cannot, considering [ . . . ] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five-step analysis. 20 C.F.R. §§ 404.1520(a)–(f). Specifically, the Commissioner must determine, in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the SSA;

> (4) whether the claimant is unable to perform his or her past work; and
>
> (5) whether the claimant is unable to perform any work in the national economy.

*Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (citing 20 C.F.R. §§ 416.920(a)–(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the [Commissioner] to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.

Here, the ALJ performed the five-step analysis and determined that Wilson satisfies Step One because he had not engaged in any substantial gainful activity since February 8, 2017, the amended alleged onset date. R. 15. At Step Two, the ALJ found that Wilson has the severe impairment of COPD, diabetes mellitus, obesity, anxiety, and major depressive disorder. R. 15. The ALJ then proceeded to Step Three, finding that Wilson did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" R. 17.

The ALJ then concluded that Wilson has the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 416.967(b), with the following limitations:

> [Wilson] cannot climb ladders, ropes or scaffolds. [Wilson] can climb ramps or stairs occasionally[,] [and he] can balance, stoop, kneel, crouch, and crawl frequently. [Wilson] must avoid concentrated exposure to temperature extremes and pulmonary irritants[,] [and] avoid all exposure to unprotected heights and moving machinery. [Wilson] would need to be able to alternate sitting and standing/walking every 15 minutes during the workday. [Wilson] can understand, remember, and carry out one-to-three step tasks[,] [and] maintain concentration, persistence, and pace for one-to-three step tasks in two-hour intervals with customary breaks spread throughout the day. [Wilson] can interact occasionally with the public and appropriately with coworkers and supervisions[,] [and he] can adapt to occasional changes.

R. 19. Based on this RFC, and relying on the testimony of a vocational expert ("VE"), the ALJ determined at Step Four that Wilson could not perform any of his relevant past work. R. 26. The ALJ then proceeded to Step Five, where based on Wilson's age, education, work experience, RFC, and the VE's testimony, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Wilson] can perform," including small products assembler and routing clerk. R. 27. Accordingly, the ALJ found that Wilson "has not been under a disability, as defined in the Social Security Act," from the amended alleged disability onset date through the date of her decision. R. 28.

## VI.

Wilson contends that substantial evidence does not support the ALJ's decision and the ALJ did not apply the correct legal standards in reaching her decision. Doc. 9. Allegedly, the ALJ failed to properly evaluate Wilson's subjective testimony, ignored parts of the record in reaching her finding that Wilson can perform a range of light work, and failed to articulate good cause for discounting the opinions of Dr. James Jeffrey, a treating psychiatrist, and Dr. Erin Smith, a one-time examining psychologist. *Id.*

### A.

Wilson contends that severe pain from neuropathy and symptoms from his COPD prevent him from working and that the ALJ did not properly consider his subjective testimony regarding the pain he suffers and the limiting effects of COPD. Doc. 9 at 5. When, as here, a claimant alleges disability due to pain and other subjective symptoms, he must present "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted). Thus, a claimant's "subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." *Id.*

7

(citations omitted). However, an ALJ may discredit a claimant's subjective testimony of disabling pain and other symptoms if the ALJ clearly articulates her reason for doing so and substantial evidence supports the ALJ's finding. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). "[I]t is not sufficient for [an ALJ] to make a single conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" SSR 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017).

Wilson testified that he runs out of air, cannot breathe, and gets exhausted due to his COPD and emphysema, and he must use his rescue inhaler two to four times each day. R. 51-52. In addition to his pulmonary issues, Wilson testified that due to the worsening neuropathy in his legs and hands, it is "hard to do anything." R. 52. The neuropathy causes pain and tingling in his hands and feet, stiffness in his hands and legs, and a cold feeling in his feet. R. 53. According to Wilson, the pain is a seven or eight on a ten-point scale, and the medication he takes for the neuropathy pain makes him extremely sleepy. R. 53. Wilson added that he can only walk a block or perform housework for five to ten minutes before he has to stop and rest; it takes him at least two to three hours to shop for groceries because if he exerts himself too much, he feels like he does not get enough air and starts "panicking for air;" he cannot do any yard work; and he can barely lift five pounds. R. 54, 57-59.

The ALJ considered Wilson's testimony and, applying the correct standard, found that Wilson's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Wilson's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ."  R. at 19-20.  In particular, the ALJ found that Wilson's subjective testimony is only partially consistent with the objective medical evidence and that the evidence "does not show symptoms or limitations at the severity alleged by [Wilson] . . . ."  R. 20.  Contrary to Wilson's contention otherwise, doc. 9 at 5, the ALJ articulated the reason for discrediting Wilson's testimony in her five-page discussion of his medical records, and substantial evidence supports the ALJ's finding.

A review of the record shows that, on March 1, 2018, Wilson reported worsening neuropathy in his hands and feet to Dr. Joyce Goetsch, his primary care physician at Athens Family Health Center ("AFHC"), and Dr. Goetsch diagnosed Wilson with diabetic neuropathy, noting that Wilson "has had neuropathy in his hands and feet for some time."  R. 454-55, 459.  Based in part on Dr. Goetsch's diagnosis, Wilson faults the ALJ for not finding his neuropathy to be a severe impairment at Step Two. Doc. 9 at 6-7.  But, even if the ALJ should have considered Wilson's neuropathy a severe impairment, any such error is harmless because the ALJ found Wilson suffered from several other severe impairments and, therefore,

9

continued her analysis beyond Step Two. *See Perry v. Astrue*, 280 F. App'x 887, 893-94 (11th Cir. 2008). And, more importantly, the ALJ considered and discussed records related to Wilson's neuropathy in reaching her findings that Wilson's subjective testimony was not consistent with the record as a whole and that Wilson could perform a range of light work. *See* R. 20-22.

As the ALJ noted, on March 5, 2018, after diagnosing Wilson with diabetic neuropathy, Dr. Goetsch prescribed a four-wheeled walker with a seat and brakes for Wilson, and she indicated that the walker was medically necessary and a life-long need. R. 456. Records from Wilson's subsequent visits to AFHC, however, do not indicate that Wilson filled the prescription or ever actually used a walker. *See* R. 499-501, 602-625. Rather, treatment notes indicate that Wilson ambulated normally and had a normal gait. R. 501, 605, 609, 620.

Dr. Goetsch also prescribed gabapentin to treat Wilson's neuropathy on March 1, 2018, R. 453, 460, 614, and, on June 1, Wilson reported that the medication helped with his symptoms, R. 608. Even so, treating notes from the June 1 visit to AFHC reflect that his neuropathy was still not well controlled, and Brian Wingate, a nurse practitioner, adjusted Wilson's prescription for gabapentin. R. 609. Upon exam three months later, Amy Woods, another nurse practitioner, noted that Wilson had diminished/absent sensation in his feet and a loss of protective sensation due to peripheral neuropathy. R. 605. Still, Ms. Woods also observed that Wilson had

normal gait and strength at that visit, R. 605, and, although Wilson reported numbness and tingling in his legs and feet at a visit six months later, he denied any tripping or falls, R. 615. As the ALJ noted, these medical records and others reflecting that Wilson had normal gait and motor strength and ambulated normally during the relevant time period are inconsistent with Wilson's testimony regarding the limiting effects of his neuropathy. *See* R. 20, 421, 429, 456, 460, 463, 469, 475, 605, 609, 620.

With respect to COPD, Wilson reported chronic shortness of breath in 2016 and also reported that he continued to smoke. R. 347, 349. Wilson was formally diagnosed with COPD by March 2017, *see* R. 454,[2] and he underwent pulmonary function testing on March 17 and April 24, 2017, R. 398, 425-26. The March 17 test revealed that Wilson's FEV1[3] was 56% of the predicted value, indicating a "lung age" of 100. R. 398, 452, 476, 487. This result showed that restriction was probable, and further examination was recommended. *Id.* Wilson's April 24 test showed that his FEV1 was 59% of the predicted value, and test notes again indicate that restrictions are probable and recommend further examination. R. 425-26, 478-79. But, as the ALJ noted, R. 20, both of Wilson's pulmonary function tests caution that

---

[2] A treatment note from December 2015 indicates that Wilson's shortness of breath was "likely COPD." R. 352.

[3] FEV1 stands for forced expiratory volume in one second.

11

the results should be "interpret[ed] with care" because Wilson performed only one acceptable maneuver, or the maneuvers were not reproducible, R. 398, 426. In addition, on April 25, 2017, Wilson denied respiratory problems when he sought treatment at the Athens-Limestone Emergency Department for a nodule in his neck, and Wilson reported that he had been sick the previous day during his second pulmonary test. R. 490. Moreover, although Wilson frequently reported shortness of breath during the relevant time period, R. 437, 439, 466, 472, 474, 501, 604, 608, his medical records consistently reflect that lung examinations revealed no dyspnea, coughing, or wheezing, good air movement, and that his lung sounds were clear, R. 437, 439, 455, 460, 463, 472, 474, 491, 501, 608. Finally, Dr. Goetsch's and Ms. Woods' treating notes from December 2017 and December 2018 indicate that Wilson's COPD was "not limiting" in severity, R. 462, 615, and, as the ALJ noted, Wilson had normal oxygen saturation levels on room air during his medical appointments, R. 22, 416, 453, 457, 461, 464, 467, 471, 473, 491, 499, 502. Taken together, these medical records provide evidence to support the ALJ's decision that the record as a whole is inconsistent with Wilson's testimony regarding the limiting effects of his COPD.

Wilson correctly notes that parts of the record support his testimony regarding the limiting effects of his COPD and neuropathy. *See* doc. 9 at 7-8. But, the question before the court is whether substantial evidence supports the ALJ's decision, not

whether the record could support a finding in Wilson's favor. *See Moore*, 405 F.3d at 1213. Indeed, as long as substantial evidence supports the ALJ's decision, the court must affirm "'even if the evidence preponderates against the [ALJ's] findings . . . .'" *Henry*, 802 F.3d at 1267. Thus, in light of the substantial deference owed to the Commissioner's decision, *Dyer*, 395 F.3d at 1212, and because the court cannot reconsider the facts or reweigh the evidence, *Martin*, 894 F.2d at 1529, the court finds that the ALJ did not err by finding that Wilson's subjective testimony regarding the limiting effects of his neuropathy and COPD was not consistent with the record.

**B.**

Wilson also contends that substantial evidence does not support the ALJ's finding that he could perform a range of light work because the ALJ ignored parts of his medical records in reaching her finding. Doc. 9. Allegedly, the ALJ focused only on evidence supporting her opinion and ignored conflicting evidence, and the ALJ failed to properly consider Wilson's need for an assistive device. *Id.* at 6, 9. An ALJ's decision is not based on substantial evidence if the ALJ selectively relies on only certain aspects of the record while ignoring other parts of the record. *See McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Instead, the ALJ's "review must take into account and evaluate the record as a whole." *Id.* (citations omitted). The ALJ's review did so in this case.

13

First, the ALJ's comprehensive discussion of Wilson's medical records and the opinion evidence, *see* R. 20-25, shows that "the ALJ considered [Wilson's] medical condition as a whole,'" *Dyer*, 395 F.3d at 1211 (quoting *Foote*, 67 F.3d at 1561). And, although Wilson contends the ALJ should have given more deference or attention to certain evidence in the record, he does not point to any evidence from the relevant time period that the ALJ ignored. *See* doc. 9. Next, as discussed above, substantial evidence supports the ALJ's decision to discredit Wilson's testimony regarding the limiting effects of Wilson's COPD and neuropathy. *See*, pp. 7-13, *supra*. The records the ALJ relied on to reach that decision show that Wilson had normal gait and motor strength, no dysthymia or wheezing and good lung sounds on exam, and normal oxygen levels on room air. *See id.* Those records also provide support for the ALJ's finding that Wilson could perform a range of light work.

As to Wilson's purported need for an assistive device, the ALJ acknowledged that Dr. Goetsch prescribed a four-wheeled walker with seat and brakes to Wilson, but the ALJ's determination of Wilson's RFC shows that she did not find the walker to be medically required. R. 20, 455. Under Social Security Rule 96-9p, "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held device to aid in walking or standing, and describing the circumstances for which it is needed . . . ." 1996 WL 374185, at *7 (1996). Here, Wilson has not presented any evidence describing the

circumstances in which he needs a walker. In addition, and as mentioned above, nothing in the records indicates that Wilson ever actually used a walker or required an assistive device for walking. *See* p. 10, *supra*. Thus, the ALJ did not err by not including Wilson's alleged need for a walker in her determination of Wilson's RFC.

## C.

Finally, Wilson contends that the ALJ erred in weighing the opinions of Dr. James Jeffrey, a treating psychiatrist, and Dr. Erin Smith, a consultative psychologist. Doc. 9 at 10-12. An ALJ "must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citation omitted). The ALJ must give "substantial or considerable weight" to the opinion of a treating physician "unless 'good cause' is shown to the contrary."[4] *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440). If the ALJ gives less than substantial or considerable weight to a treating physician's opinions, she must clearly articulate her reasons for doing so. *Winschel*, 631 F.3d at 1179. Unlike the opinion of a treating physician, an ALJ owes no special deference to the opinion of a one-time consultative examiner. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th

---

[4] "Good cause exists 'when []: (1) [the] treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241).

15

Cir. 1987) (citation omitted); *Hernandez v. Soc. Sec. Admin., Comm'r*, 761 F. App'x 901, 903 (11th Cir. 2019) (citing *McSwain*, 814 F.2d at 619).

1.

Dr. Jeffrey treated Wilson for moderate major depressive disorder and panic disorder at the Mental Health Center of North Central Alabama during the relevant time period. R. 406, 560-601. Dr. Jeffrey opined on multiple occasions in 2018 that Wilson "would be unable to maintain any kind of employment due to excessive absences based on his multiple medical problems and psychiatric morbidity taken singly or combined." R. 564, 591, 593. The ALJ considered Dr. Jeffrey's opinions but gave them little weight on the grounds that the opinions are vague, "involve conclusions reserved to the Commissioner" and are inconsistent with the medical record as a whole, including Dr. Jeffrey's treating notes. R. 24. The court finds no error in the ALJ's decision to discount Dr. Jeffrey's opinion.

As an initial matter, whether Wilson can maintain employment is an issue reserved to the Commissioner, and an ALJ gives no special significance to opinions on issues reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d); *Pate v. Comm'r, Soc. Sec. Admin.*, 678 F. App'x 833, 835 (11th Cir. 2017). In addition, as the ALJ noted, Dr. Jeffrey's opinion that Wilson could not work did not include any assessment of Wilson's "specific functional capabilities," R. 24, and good cause

exists to discount a treating physician's opinion when the opinion is conclusory, *see Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241).

Moreover, as the ALJ noted, Dr. Jeffrey's opinion that Wilson cannot maintain employment is not entirely consistent with the record as a whole and Dr. Jeffrey's own findings from mental status examinations of Wilson. *See* R. 24. Dr. Jeffrey's notes from each examination reflect that Wilson had fair insight and judgment, adequate attention and concentration, and no deficiencies in short or long term memory. R. 560, 562, 564, 591, 594. In addition, Wilson reported to Dr. Jeffrey in August 2018 that medication "helps some with his anxiety," R. 594, and in September 2018, Wilson reported to Ms. Woods, a nurse practitioner at AFHC, that he had no anxiety, R. 604. Wilson's treating records from the Mental Health Center of North Central Alabama also reflect that although Wilson's mood went up and down, his therapist regularly assessed his mood as fair and his affect as appropriate, R. 401-04, 571-90, 598, 600. Based on these records, the ALJ articulated good cause for discounting Dr. Jeffrey's opinions on the grounds that they are inconsistent with the record and Dr. Jeffrey's own treating notes.

2.

Dr. Smith examined Wilson in April 2017 and opined that "Wilson's overall level of social and adaptive functioning, based upon mental health issues along, appears to be severely impaired" and that Wilson's "ability to maintain gainful full-

time employment based upon cognitive or mental health issues, is severely impaired." R. 430-31.  The ALJ considered this opinion but gave it little weight.  R. 25.  The court finds no error in the ALJ's decision because an ALJ owes no special deference to the opinion of a one-time consultative examiner, *see Hernandez*, 761 F. App'x at 903 (citing *McSwain*, 814 F.2d at 619), and substantial evidence supports the ALJ's determination that Dr. Smith's opinion is not consistent with the record or her own examination, *see* R. 25.

    Dr. Smith's report of her exam reflects that Wilson's "behavior during the interview was appropriate," that his "[t]hought content and processes were within normal limits at the time of the interview," that "[h]is insight and judgment are good," and that Wilson "reported that his work performance has not been adversely affected due to his depression."  R. 429-30.  Dr. Smith also noted that Wilson's "[c]ognition appears to be in the [a]verage range," and, based on her exam, she found that Wilson's "attention and concentration were good."  R. 430.  These exam notes are inconsistent with Dr. Smith's opinion that Wilson's ability to maintain gainful employment is severely impaired by cognitive and mental health issues, and they provide substantial evidence to support the ALJ's decision to give the opinion little weight.

## VII.

Based on the foregoing, the court concludes that substantial evidence supports the ALJ's determination that Wilson is not disabled and that the ALJ applied the right legal standards in reaching her decision. Therefore, the Commissioner's final decision is due to be affirmed. The court will enter a separate order in accordance with this memorandum opinion.

**DONE** the 6th day of January, 2021.

*Abdul Kallon*
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE